The PRESIDENT
delivered the opinion of the court.
The first question to be considered is, w'hether the suit ought to have abated, by the death of the original defendant.
The act of Assembly declares, that the death of either party between verdict and judgment, shall not abate the suit, but that judgment shall be entered, as if both parties were living.
It is contended, that this is no verdict, and therefore, not provided for by the law. It is true, that verdicts must be certain in themselves, or such as may be made so, by reference to that which is certain.
It is common for them to refer to records or to other papers equally certain. On a demurrer to evidence, a conditional verdict, *486 dependent upon the opinion of the court as to the demurrer, is common and proper. So a verdict, to depend upon the opinion of the court, on a case stated on the record, is an usual and legal proceeding. Cases agreed, are sometimes substituted in the room of special verdicts. But it is very novel, to find both in the same record, and connected together. Even this might have been unexceptionable, if the verdict had referred to a state of facts before agreed to. But to supply the uncertainty of a verdict, by referring to that, which, so far from being certain, did not exist for five years afterwards, cannot possibly be right. Suppose the parties had refused to agree a case; or had in reality disagreed about the facts: this might well have happened, and what could have been done. The court could not coerce them to agree upon a case, nor could any thing be substituted in its room.
We can find no cases determined in England, upon the statute of the 8 and 9 Will. 3, C. 11, (from which our law was copied,) like to the present.
*Upon principle, we have no doubt, but that the administrator was not bound to cure the uncertaintj' in the verdict, by agreeing to a state of facts, of which he might be totally ignorant, because his intestate having more knowledge of them had consented to do so. — That he might therefore have abated the suit, if he had chosen it, is clear. But he certainly might wave this advantage, and prefer a trial upon the merits. This he has done, by agreeing to a state of facts. But then, the cause must rest upon the agreed case, independent of the verdict.
Upon the merits, there is not much difficulty. The condemnation in the court of admiralty, could not bind the intestate, who was no party to the suit. If the sentence of a foreign court of admiralty had condemned this slave, as a prize to the British, we should have regarded it, though Pierce had been no party; because it would not have been in his power to have become a party. So, if in this case, Pierce had put in his claim, and it had been decided against him, that decision, whilst unre-versed, would have bound this, and all other courts. But the slave in question, was libelled, and condemned, by the name of Jack Robinson, instead of that, by which he was always called; and therefore Pierce could not be presumed to have had notice, that his interest was involved in the suit, so as to enable him to assert his right.
The first resolution of Congress, which passed on the 2Sth of November 1775, au-thorises vessels commissioned by that body, to capture and make prizes of all armed vessels, belonging to the enemy, employed in the war, and of all transports carrying troops, warlike, or naval stores, or provisions, and directs the distribution of the prizes.
The next resolution which passed on the 23d of March 1776, extends the right of capture to all vessels, and to all goods, wares and merchandize, belonging to any inhabitant of Great Britain: but slaves are not mentioned. Whether they should be considered as goods &c. within the meaning of this resolution or whether they are to be classed with lands, or ships and cargoes, so as by the rules of postliminium, to require the sentence Jof a Court of Admiralty to change the property, or whether they are to be considered in the light of moveables, and the propertjT in them changed by capture, without condemnation r are questions, which the court think unnecessary to consider, since it is not stated, that the slave belonged to an inhabitant of Great Britain, so as to bring the case within the resolution of Congress: neither is it stated, that he was taken in war
by the enemy, and ^recaptured, so as to bring it within the exception in the act of Assembly passed in 1782. It appears, that he was the property of Pierce, and being such, ran off, and was found on board an enemy’s vessel, where no person claimed a right to him.
The sale therefore, in the present instance, could not divest the right of the original proprietor, however inconvenient this doctrine might prove to purchasers— for though equitable rights may, in favor of fair bona fide purchasers, for valuable consideration, and without notice, be lost by a sale, legal rights never can, unless there be fraud, as in the case of a prior mortgagee standing by, whilst another is throwing away his money by purchasing the mortgaged premises, without giving notice of his prior incumbrance — in cases of legal rights, the principle of caveat emptor properly applies.
Judgment affirmed.